No. 21-CV-08321 (JPO)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOTEL ASSOCIATION OF NEW YORK CITY, on
behalf of itself and its members,

Plaintiff,

-against-

CITY OF NEW YORK, and JOHN DOES 1-10,

Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT

**GEORGIA M. PESTANA**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:    Rachel B. Kane*
*Melanie V. Sadok*
*Susan A.M. Turk*
*Tel:  (212) 356-4371*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..............................................................................................ii

ARGUMENT

       POINT I

           THE SEVERANCE LAW IS NOT PREEMPTED
           BY ERISA.....................................................................................................2

       POINT II

           THE SEVERANCE LAW IS NOT PREEMPTED
           BY STATE LAW...........................................................................................7

CONCLUSION..............................................................................................................10

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

*Belanger v. Wyman-Gordon Co.*,
    71 F.3d 451 (1st Cir. 1995)...................................................................................5

*Berman v. Tyco Int'l Ltd.*,
    2013 WL 5309154 (S.D.N.Y. Sept. 20, 2013)...........................................................4

*Dennis v. RSL Com U.S.A.*,
    1998 WL 409720 (S.D.N.Y. Jul. 21, 1998) .........................................................4, 5

*Dir. of Bureau of Labor Standards v. Fort Halifax Packing Co.*,
    510 A.2d 1054 (Me. 1986),
    *aff'd, Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1 (1987).................................................................................................3

*Fort Halifax Packing Co. v. Coyne*,
    482 U.S. 1 (1987).................................................................................................3

*Gabelman v. Sher*,
    2012 WL 1004872 (E.D.N.Y. Mar. 23, 2012).........................................................6

*Garcia v. New York City Dept. of Health & Mental Hygiene*,
    31 N.Y.3d 601 (2018).......................................................................................8, 9

*Hall v. LSREF4 Lighthouse Corp. Acquisitions, LLC*,
    220 F. Supp. 3d 381 (W.D.N.Y. 2016).....................................................................4

*Hijeck v. United Techs. Corp.*,
    24 F. Supp. 2d 243 (D. Conn. 1998).........................................................................7

*Howard Jarvis Taxpayers Assn. v. Cal. Secure Choice Ret. Sav. Program*,
    997 F3d 848 (9th Cir 2021) ....................................................................................2

*ICL Data Device Corp. v. County of Suffolk*,
    182 A.D.2d 293 (2d Dep't 1992)..........................................................................7, 8

*Int'l Franchise Ass'n v. City of New York*,
    193 A.D.3d 545 (1st Dep't 2021) ....................................................................8, 9, 10

*James v. Fleet/Norstar Fin. Group*,
    992 F.2d 463 (2d Cir. 1993)...................................................................................4

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
    274 F.3d 706 (2d Cir. 2001)...................................................................................6

**Cases**                                                                                      **Pages**

*Kuhbier v. McCartney*,
    239 F. Supp. 3d 710 (S.D.N.Y. 2017)........................................................................7

*Okun v. Montefiore Med. Ctr.*,
    793 F.3d 277 (2d Cir. 2015)..............................................................................3, 4, 6

*Schonholz v. Long Island Jewish Med. Ctr.*,
    87 F.3d 72 (2d Cir. 1996)............................................................................... 5, 6-7

*Simas v. Quaker Fabric Corp.*,
    6 F.3d 849 (1st Cir. 1993)...................................................................................7

*Taverna v. Credit Suisse First Boston*,
    2003 WL 255250 (S.D.N.Y. Feb. 4, 2003).......................................................4, 5

*Tischmann v. ITT/Sheraton Corp.*,
    145 F.3d 561 (2d Cir. 1998)..............................................................................4, 6

**Statutes**

Labor Law § 27.............................................................................................................8

Labor Law § 501...........................................................................................................10

Labor Law § 591(6)(a)....................................................................................................9

Labor Law § 591(6)(b)....................................................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
                                                          :
                                                          :
HOTEL ASSOCIATION OF NEW YORK CITY, on                    :
behalf of itself and its members,                         :    No. 21-CV-08321 (JPO)
                                                          :
                                        Plaintiff,        :    **REPLY MEMORANDUM OF**
                                                          :    **LAW IN SUPPORT OF**
                -against-                                  :    **DEFENDANT CITY OF NEW**
                                                          :    **YORK'S MOTION TO**
CITY OF NEW YORK, and JOHN DOES 1-10,                     :    **DISMISS THE COMPLAINT**
                                                          :
                                        Defendants.       :
                                                          :
                                                          :
                                                          :
                                                          :
------------------------------------------------------------------------X

The Complaint alleges that the Severance Law is preempted by both ERISA and

state law. Both of these claims fail as a matter of law. With respect to ERISA, Plaintiff's opposition

overstates both the scope of preemption and the amount of discretion employers must exercise in

order to effectuate payments required by the Law. Plaintiff's efforts to find ambiguity in the Law

cannot overcome the fact it requires payment of specified amounts of severance to objectively

defined categories of employees, only in the case of specific, discrete events occurring during a

limited time period, and only for a limited duration. No ongoing administrative scheme is

necessary to comply with the Law; therefore it is not preempted by ERISA.

With respect to Plaintiff's state law preemption claim, Plaintiff has failed to

establish that the Unemployment Insurance Law preempts its field, and more importantly, that the

Severance Law even regulates the same field. Plaintiff completely ignores the plain language of

the Unemployment Insurance Law which makes clear that severance pay is a distinct field from

unemployment insurance, and that severance pay may be "statutorily" or "otherwise" required.

Plaintiff's attempt to turn the purpose of the Unemployment Insurance Law on its head by arguing that it creates rights for the employers must be rejected.

## ARGUMENT

### POINT I

### THE SEVERANCE LAW IS NOT PREEMPTED BY ERISA

As an initial matter, Plaintiff appears to conflates the two distinct concepts of administrative scheme and administrative burden. ERISA preempts laws that require the establishment of an ERISA plan, and the Second Circuit has held that a severance obligation can constitute an ERISA plan when an ongoing administrative scheme is necessary to effectuate the payments. Plaintiff argues that the Severance Law is preempted because it imposes "new obligations" and "administrative and litigation costs" on employers. ECF 29 at 8. But Plaintiff cites no case, and the City is not aware of any case, holding that a severance obligation constitutes an ERISA plan merely because it is costly or otherwise burdensome for the employer. *Cf. Howard Jarvis Taxpayers Assn. v. Cal. Secure Choice Ret. Sav. Program*, 997 F3d 848, 863 (9th Cir 2021) (explaining that while some employers might find compliance with law creating a state-managed individual retirement account "irritating or even burdensome, that does not make their involvement in [the account] tantamount to establishing or maintaining an ERISA plan").

Plaintiff also greatly overstates the amount of discretion a hotel must exercise in making payments under the Law. For example, Plaintiff argues that hotels must exercise discretion to determine "what quantum of work counts as . . . a years' worth of work" for part-time employees (ECF 29 at 13-14), but eligibility for payments is defined by duration of employment, not "quantum of work" (Severance Law § 1 (employee is eligible if, as of March 1, 2020, they "had been employed by such hotel for a period of not less than one year to perform hotel service")).

2

Therefore, there is no need for discretionary determinations as to "quantum of work." Similarly, Plaintiff's claimed confusion about the Law's application to "partial closures" of a hotel (ECF 29 at 14) is unfounded. The Law defines a "closure" as the "closure of a hotel" (Severance Law § 1) – not the closure of a portion of a hotel, such as a floor or restaurant (*see* ECF 29 at 14).[1]

ERISA is not implicated merely because *some* discretion is required to comply with the Law. Some amount of discretion would be required to interpret and apply any law requiring payment of severance benefits, and not all laws requiring such payments are preempted. E.g., *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). Indeed, discretion was required in order to effectuate the payments required under the Maine statute at issue in *Fort Halifax*. That statute required payment of one week's pay for "each year of employment by the employee in that establishment," but it did not specifically address employees known as "'live-haul' employees," who were employed by covered establishments but whose work was performed mostly "outside the physical space of the plant." *Dir. of Bureau of Labor Standards v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1064 (Me. 1986), *aff'd*, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). Still, the statute was not preempted by ERISA. *Id.*

The need (or potential) to exercise discretion is only relevant to the extent it demonstrates that an ongoing administrative scheme will be required, and is merely among the three factors the Second Circuit has identified as helpful in determining whether such a scheme is

---

[1] Plaintiff's continued insistence that the Law requires hotels to "determine whether an employee left voluntarily" or was terminated "for cause" (ECF 29 at 10) ignores the context in which this Law was enacted, i.e., a pandemic that led to the closure of hundreds of hotels and the loss of tens of thousands of hotel jobs within a matter of months (*see* Compl. ¶24 (alleging closure of 200 hotels and 45,000 person reduction in hotel workforce)). Plaintiff also ignores that the Second Circuit's opinion in *Okun* that a "for cause" determination required more than minimal discretion was expressly limited to the facts presented in that particular case. *Okun v. Montefiore Med. Ctr.*, 793 F.3d 277, 280 n.2 (2d Cir. 2015) ("*At least on the facts alleged here*, we do not agree that a determination as to whether a termination was 'for cause' requires only a 'minimal quantum of discretion' insufficient to raise a policy to the level of an ERISA plan") (emphasis added).

necessary.[2] These factors are non-exclusive[3] and each factor is not necessarily weighted equally. *See Tischmann*, 145 F.3d at 566 (explaining that Court had not decided "which one or more of these factors will be determinative in every case" and that "other factors might be relevant") (quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996)); *Hall v. LSREF4 Lighthouse Corp. Acquisitions, LLC*, 220 F. Supp. 3d 381, 400 (W.D.N.Y. 2016) (potential need for individualized eligibility determinations was "not sufficient to overcome consideration of" other factors that weighed against application of ERISA); *Berman v. Tyco Int'l Ltd.*, 2013 WL 5309154, *5 (S.D.N.Y. Sept. 20, 2013) (policy was not ERISA plan where need to "take into account the circumstances of each employee's termination" was "outweighed by" other factors).

An ongoing administrative scheme is not necessary when – as in this case – any discretionary determinations will be made only on a one-time basis or within a limited time period. *See James v. Fleet/Norstar Fin. Group*, 992 F.2d 463, 467-68 (2d Cir. 1993) (no ongoing administrative scheme was necessary to effectuate severance payments because eligibility determinations would only need to be made during short period of time and in relation to single event); *Hall*, 220 F. Supp. 3d at 400 (no ongoing administrative scheme was necessary where plan "only comes into play" under limited and short-term circumstances); *Dennis v. RSL Com U.S.A.*,

---

[2] The three factors are whether: (1) the employer is "required to analyze the circumstances of each employee's termination separately in light of certain criteria;" (2) "the employer's undertaking or obligation requires managerial discretion in its administration;" and (3) "a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits." *Okun*, 793 F.3d at 279 (quoting *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 566 (2d Cir. 1998)).

[3] Additionally, courts often look to the presence or absence of the "usual earmarks of an ERISA plan." E.g., *Taverna v. Credit Suisse First Boston*, 2003 WL 255250, *4 (S.D.N.Y. Feb. 4, 2003) (noting absence of "usual earmarks of an ERISA plan"; e.g., "plan documents," "plan administrator," "fiduciaries," "provision for seeking administrative review," "employee contributions," "procedures for submitting 'claims,'"; and "monies set aside or held in trust"). The Severance Law neither provides for nor requires any such earmarks.

1998 WL 409720, *4 (S.D.N.Y. Jul. 21, 1998) ("case by case" determinations as to severance pay for certain employees did not "bring these payments within the scope of ERISA" because decisions were "one time event" and did not require "ongoing administrative program"); *see also Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 455 (1st Cir. 1995)[4] (severance undertaking was not ERISA plan where employer's offer "pivoted on a single, time-specific event" and did not involve either "promises that had to be kept over a lengthy period" or "lasting financial commitment").

Here, since the Law only applies to closures and mass layoffs occurring within a short and fixed window of time (most of which has already passed), any determinations that must be made regarding the Law's application to a hotel or employee eligibility will be made on a one-time basis. Therefore, no ongoing administrative scheme will be necessary.[5] *See id.*

Following the initial one-time determination of eligibility, no further discretion is required. An employer must simply continue to make the weekly payments to eligible employees in the fixed amount of $500 per week for a maximum of thirty weeks. The only ongoing monitoring in which an employer must potentially engage is confined to monitoring *its own business*[6] – i.e., whether the hotel has reopened and recalled 25% or more of the employees, is converting to another use,[7] has recalled any of the employees receiving severance and/or is paying other

---

[4] *Belanger* has been cited approvingly by the Second Circuit. *See Schonholz*, 87 F.3d at 76.

[5] Contrary to Plaintiff's contention, the question of whether an ongoing administrative scheme is required does not present a factual dispute (ECF 29 at 20) but rather requires a legal analysis that is often conducted in the context of a motion to dismiss (*see, e.g., Taverna*, 2003 WL 255250; *Dennis*, 1998 WL 409720).

[6] Plaintiff contends that it must monitor whether its employees have become employed elsewhere because such other employment would make employees ineligible for severance under the Law. ECF 29 at 18 (citing Severance Law §§ 2(a), 3(b)). But employee eligibility depends on whether the employee "remains laid off" from the hotel or has been "recalled" (Severance Law §§ 2(a), 3(b)) – not whether they *remain unemployed* more generally.

[7] Plaintiff's suggestion that a hotel is unable to determine whether it is converting to another use – apparently faulting the Law for not defining exactly what level of corporate action is required to make such a determination (*See* ECF 29 at 14-15) – is unreasonable and should be rejected.

severance or similar pay to eligible former employees. [8] *See* Severance Law §§ 2(b), 3(a)-(b). In addition to being required for only a limited period of time, such monitoring is confined to "basic action . . . relate[d] to the ordinary operation of [the employer's] business" and therefore does not require a separate administrative scheme. *Gabelman v. Sher*, 2012 WL 1004872, *4 (E.D.N.Y. Mar. 23, 2012) (retirement undertaking requiring monitoring for objective facts, such as whether employee was actively employed or had designated a beneficiary, did not require separate ongoing administrative scheme and was therefore not an ERISA plan).

The payments required by the Law are a far cry from the severance obligations at issue in *Okun*, *Kosakow*, *Tischmann*, *Schonholz* and *Simas*, the cases cited by Plaintiff in which the court held the obligation at issue to be an ERISA plan. In those cases, the severance obligations required discretionary determinations of eligibility over an extended period of time, and, in *Tischmann* and *Schonholz*, additional subjective monitoring during the payout period. *See Okun*, 793 F.3d at ("multi-decade commitment" to "pay severance every time an eligible employee is terminated" involved a contingency that would "occur on a relatively regular basis"); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 737 (2d Cir. 2001) (involving severance payments "offered without any apparent date restriction"); *Tischmann*, 145 F.3d 561, 566, 567 (where severance obligation was "not limited . . . to a short span of time upon a plant or office closing" but rather was "designed to pay benefits" in response to departures "over a protracted period of time," and also required employees to "comply with specified standards of conduct" while receiving benefits, such obligation required ongoing discretion and administration) (quoting *Schonholz*); *Schonholz*, 87 F.3d at 76-77 (distinguishing *Fort Halifax* and *James* on the grounds

---

[8] Though Plaintiff objects that an employer must exercise discretion to determine what constitutes "severance or similar pay" (ECF 29 at 16), it proffers no examples of payments that might generate confusion in this regard.

6

that plan at issue was temporally "unlimited" and required employees to "mak[e] a reasonable and good faith effort to find employment elsewhere"); *Simas v. Quaker Fabric Corp.*, 6 F.3d 849 (1st Cir. 1993) (unlike *Fort Halifax* plan, Massachusetts law requiring severance payments required eligibility determinations that, among other things, would be "triggered separately" by the termination of each employee "within one of several alternative time periods"). *See also Kuhbier v. McCartney*, 239 F. Supp. 3d 710 (S.D.N.Y. 2017) (distinguishing cases and holding that employer agreement constituted ERISA plan where employer was required to monitor employee's compliance with non-compete, and confidentiality clauses imposed "continuing responsibilities" on both parties); *Hijeck v. United Techs. Corp.*, 24 F. Supp. 2d 243, 251 (D. Conn. 1998) (severance benefit was not ERISA plan where, unlike in *Tischmann* and *Schonholz*, there was no "ongoing compliance monitoring function in order to continue receiving benefits").

**POINT II**

**THE SEVERANCE LAW IS NOT PREEMPTED BY STATE LAW**

Plaintiff's attempt to establish that the Severance Law is preempted by the Unemployment Insurance Law fails.[9] Plaintiff leads its argument with a misleading quote of a Second Department case, *ICL Data Device Corp. v. County of Suffolk*, 182 A.D.2d 293 (2d Dep't 1992), for the proposition that the Labor Law occupies "the entire field of regulation." ECF 29 at 21. However, *ICL Data* addresses preemption of the field of workplace safety, not unemployment insurance or severance pay. *See ICL Data*, 182 A.D.2d at 301 (concluding that "the State Legislature intended to preclude local regulation in the field of employee safety in the workplace."). More specifically, *ICL Data* dealt with the preemptive intent of Article 2, and in

---

[9] To the extent this Court dismisses Plaintiff's ERISA claim, the Court need not exercise supplemental jurisdiction over Plaintiff's state law preemption claim. However, in the interest of judicial economy, the City seeks dismissal of this claim as well.

particular Section 27, of the Labor Law, whereas Plaintiff here asserts that the Severance Law is preempted by Article 18 of the Labor Law. *See* Compl. ¶ 60. Thus, Plaintiff's reliance upon *ICL Data* is misleading and misplaced.

Further, Plaintiff's attempt to establish field preemption misses the point. The City asserted that the Court need not make such determination as the Unemployment Insurance Law and Severance Law regulate different fields altogether.[10] Simply because the two laws operate in similar fashions or even deal with some of the same matters does not mean that they regulate the same fields or that the local law is invalid. *See Garcia v. New York City Dept. of Health & Mental Hygiene*, 31 N.Y.3d 601, 620 (2018). *See also Int'l Franchise Ass'n v. City of New York*, 193 A.D.3d 545 (1st Dep't 2021). Plaintiff summarily dismisses the line of case the City cited to for this proposition, asserting that those cases do not address field preemption and are therefore inapplicable. *See* ECF 29 at 24. However, that is not accurate, as each of the cases cited to discussed and rejected field preemption. For instance, in *Int'l Franchise Ass'n,* the Appellate Division explicitly rejected the plaintiff's argument that there was field preemption, finding, as the Court should find here, that the local and state laws regulated different fields. *See Int'l Franchise Ass'n*, 193 A.D.3d at 547. In *Garcia v. New York,* the Court of Appeals also rejected a field preemption argument, reiterating that "the mere fact that the Legislature has enacted specific legislation in a particular field does not necessarily lead to the conclusion that broader agency regulation of the same field is foreclosed. The key question in all cases is what did the Legislature

---

[10] Contrary to Plaintiff's assertion otherwise, the City *does* contest that there is field preemption, but believes it is not necessary to address given that the laws regulate separate fields. *See* ECF 29 at 22.

intend?" *Garcia*, 31 N.Y.3d at 620 (quoting *Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 N.Y.2d 186, 193, (1988)).[11]

Plaintiff here has not pointed to anything to support the conclusion that the State *intended* to preempt the Unemployment Insurance field. At best, Plaintiff describes the Unemployment Insurance framework regulatory scheme and some similarities to the Severance Law, but as *Garcia* made clear, that alone is insufficient absent evidence of intent. Here, there is evidence of the legislature's intent to treat severance pay as a distinct field from unemployment insurance. That evidence is found in the plain language of the statute, which Plaintiff utterly ignores. *See* Labor Law § 591(6)(a) (distinguishing between unemployment insurance payments and severance pay-which the statute calls "dismissal pay"). Plaintiff is likewise silent in response to the fact that the Unemployment Insurance Law acknowledges that dismissal pay can be "statutorily" or "otherwise" required, and thus does not preclude legislation like the Severance Law. Labor Law § 591(6)(b). The fact that a single council member apparently believes the Severance Law is a form of unemployment insurance does not undermine the clear language of the statute.

Finally, in a desperate plea to the Court, Plaintiff attempts to divert the Court from preemption analysis to one of equity, characterizing its members as the victims of this legislation. However, Plaintiff's argument that the Severance Law "impermissibly augments the liability of hotel employers beyond that contemplated by statute[,]"[12] ECF 29 at 24, frames the Unemployment Insurance Law "as guaranteeing employer rights, [which] would turn the law

---

[11] The Court of Appeals in *People v. Lewis* and *People v. Judiz* also addressed field preemption, rejecting it in both cases.

[12] Further, the fact that the Severance Law aids a "small subset of the unemployed" has no bearing on the preemption analysis. ECF 29 at 24. In fact, in *Int'l Franchise Ass'n*, 193 A.D.3d 545, the First Department upheld a local law targeted at assisting fast food workers.

upside down." *Int'l Franchise Ass'n*, 193 A.D.3d at 546. Employer payments into the unemployment insurance fund "are not rights conferred upon the employer that are violated if added to." *Id.* at 546-47. As Plaintiff concedes, the intent of the Unemployment Insurance Law is to address "[e]conomic insecurity due to unemployment[, which] is a serious menace to the health, welfare, and morale of the people of this state[, and] which now so often falls with crushing force upon the unemployed worker and his family." Labor Law § 501. *See also* ECF 29 at 22. The Severance Law adds to the support provided by the Unemployment Insurance Law, and such additional benefits were clearly contemplated by the legislature.

Thus, as Plaintiff has failed to demonstrate an intent to preempt the field, and have utterly ignored the legislature's intent to treat severance pay and unemployment insurance as separate fields that may coexist, its state preemption claim must be dismissed in its entirety.[13]

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the complaint should be granted in its entirety.

Dated:       New York, New York
             February 10, 2022

GEORGIA M. PESTANA
Corporation Counsel
  of the City of New York
*Attorney for Defendant City of New York*
100 Church Street
New York, New York 10007
(212) 356-4371
rakane@law.nyc.gov
sturk@law.nyc.gov
msadok@law.nyc.gov

---

[13] Plaintiff's assertion that the City's interpretation of the law cannot be resolved on a motion to dismiss is yet another desperate plea to avoid dismissal of the claim. Plaintiff has not explained why this legal issue cannot be resolved in the City's favor at this stage of the litigation.

_/s Rachel B. Kane_
By:  Rachel B. Kane
      Melanie V. Sadok
      Susan A.M. Turk

      Assistant Corporation Counsel